# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**DANIEL BROYLES JR.,**
**Claimant Below, Petitioner**

**FILED**

May 5, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)     No. 16-0381** (BOR Appeal No. 2050850)
                    (Claim No. 2014023870)

**MOUNTAIN VENDING, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Daniel Broyles Jr., by Reginald D. Henry, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Mountain Vending, Inc., by Lisa Warner Hunter, its attorney, filed a timely response.

The issue on appeal is whether the alleged injury in this claim should be held compensable. This appeal originated from the February 25, 2014, claims administrator's decision rejecting the claim. In its October 2, 2015, Order, the Workers' Compensation Office of Judges affirmed the decision. The Board of Review's Final Order dated March 23, 2016, affirmed the Order of the Office of Judges. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Daniel Broyles Jr., a route man, alleges he sustained an occupational injury in the course of his employment when his use of a work vehicle caused him to inhale exhaust fumes, burning rubber fumes, and carbon monoxide. On January 24, 2014, Mr. Broyles presented to Raleigh General Hospital for episodes of dizziness that began approximately two weeks prior. A chest x-ray demonstrated mildly hyperinflated lungs. Mr. Broyles was admitted and was diagnosed with sinus bradycardia most likely attributable to his medications, dizziness most likely attributable to nausea and gastrointestinal upset, and hypertension. On January 25, 2014, Mr. Broyles

1

underwent an echocardiogram which revealed a significantly depressed ejection fraction of 30-35%.

On February 4, 2014, Mr. Broyles returned to the emergency room at Raleigh General Hospital with complaints of dizziness. A CT of the brain revealed no evidence for acute intracranial process. A chest x-ray revealed linear atelectasis of the right lower lobe. Mr. Broyles filed two applications for worker's compensation benefits alleging an injury during the course of his occupation. Neither application indicated his symptoms were a result of his occupation. On February 25, 2014, the claims administrator rejected the claim stating there was no evidence to support any type of exposure while Mr. Broyles was in the course and scope of his employment.

Mr. Broyles has a significant medical history. Starting in August of 2006, Mr. Broyles began seeing Thair Barghouthi, M.D., for chest pains and dizziness. On September 9, 2006, Mr. Broyles underwent a heart catheterization and was diagnosed with coronary atherosclerosis disease with mild LAD stenosis, severe left ventricle dysfunction with an ejection fraction of 40%, mild pulmonary hypertension, and hypertensive heart disease. Beginning in December of 2008, Mr. Broyles also began seeing Kimberly Ballad, D.O., for sleep apnea, breathing problems, and hypertension. On February 20, 2014, Mr. Broyles reported to Dr. Ballard that he had been hospitalized for four days with dizziness, dyspnea, and chest pain which he believed were attributable to a leaky exhaust in his work vehicle. On May 20, 2014, Mr. Broyles was seen by Charles Porterfield, D.O., for dyspnea. Dr. Porterfield diagnosed dyspnea and carbon monoxide exposure based on Mr. Broyles's claims of inhaling exhaust fumes.

On November 24, 2014, Mr. Broyles's testified in a deposition that the work van he was driving in the course of his employment had an exhaust leak. Mr. Broyles reported that he notified the company mechanic at least twice weekly that a problem existed with the vehicle. When driving the vehicle, Mr. Broyles would inhale fumes causing him to experience dizziness, nausea, and vomiting. Mr. Broyles was able to drive other vehicles for some periods of time, during which he did not experience the symptoms. However, those vehicles became unsafe to drive and his primary work vehicle was returned to him. His symptoms resumed with use of his primary work vehicle. Mr. Broyles also testified that during his hospitalization he did not experience the symptoms but they returned when he resumed working.

On December 17, 2014, Marsha Bailey, M.D., performed a review of Mr. Broyles's medical records. Dr. Bailey noted that Mr. Broyles has a significant history of coronary artery disease, type II diabetes, hypertension, obesity, sleep apnea, and sinus bradycardia. He also has a significant history of heart disease dating back to 2006. Dr. Bailey opined that Mr. Broyles's symptoms were solely a result of these personal risk factors. She noted that Mr. Broyles's heart ejection fraction was at 30-35%, significantly worse than the normal range of 50-55%. Persons with this low of ejection fraction are easily fatigued and become short of breath. Dr. Bailey also explained that Mr. Broyles's shortness of breath was more than likely the result of his previous thirty-five year smoking habit. Ultimately, Dr. Bailey determined there was no evidence of carbon monoxide exposure at work; rather, Mr. Broyles's heart and lung disease, along with other risk factors, were solely responsible for his symptoms.

Dr. Bailey again reviewed Mr. Broyles's medical records on January 22, 2015. Dr. Bailey reiterated her belief that Mr. Broyles's symptoms were the result of his longstanding overall state of poor health, which is solely related to his personal risk factors and not to his occupation. Dr. Bailey stated it was critical to understand that Mr. Broyles's ability of his heart to pump blood, measured by ejection fraction, is severely damaged. The current symptoms Mr. Broyles claims to experience are nearly identical to those experienced when he was first diagnosed with heart disease. Dr. Bailey concluded Mr. Broyles's symptoms were not related to his occupation.

On April 6, 2015, Robert Leeber testified on behalf of Mr. Broyles. Mr. Leeber indicated that he interacted with Mr. Broyles on a professional level as he was a security guard at a hospital on Mr. Broyles's work route. Mr. Leeber would unlock the door so that Mr. Broyles could carry out his duties and would often see him for twenty minutes at a time. Mr. Leeber noted five occasions on which Mr. Broyles appeared disoriented, dizzy, and nauseous: December 18, 2013; December 23, 2013; December 30, 2013; January 7, 2014; and January 14, 2014. Mr. Leeber testified that on two of those occasions he smelled burning rubber and witnessed smoke inside the vehicle.

The Office of Judges affirmed the claims administrator's decision rejecting the claim on October 2, 2015. The Office of Judges provided a detailed overview of the evidence submitted by Mr. Broyles and Mountain Vending, Inc. It noted that Mr. Broyles claimed to only experience dizziness, nausea, and vomiting while working and being exposed to fumes. Medical records of Dr. Ballard and Dr. Porterfield indicated Mr. Broyles exhibited these symptoms. The Office of Judges also noted that Mr. Leeber's testimony was totally unbiased and thus carries great weight. The Office of Judges also noted that no physician had marked Mr. Broyles's illness as being occupational on either of the applications for benefits he filed. Further, Dr. Bailey detailed Mr. Broyles's significant medical history which included heart disease, a significant prior smoking habit, and obesity, all of which provide a medical explanation for the symptoms exhibited. Ultimately, the Office of Judges found the preponderance of the evidence failed to demonstrate that Mr. Broyles has an occupational injury from the alleged exposure. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on March 23, 2016.

We agree with the decision of the Board of Review. None of the treating physicians have clearly opined that Mr. Broyles's illness is the result of his occupation. Rather, they have merely repeated what Mr. Broyles tells them in their records. In contrast, Mr. Broyles has a clear, significant medical history which appears to be the source of his myriad of symptoms.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: May 5, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker